UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| PHILLIP ANDREW EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00307-JRS-MJD |
| | ) | |
| EMERSON, | ) | |
| DIANA JONES, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT

### I. Introduction

Plaintiff Phillip Andrew Evans was incarcerated at the Vigo County Jail (Jail) when the events alleged in the complaint occurred. He is currently confined at the Wabash Valley Correctional Facility. Mr. Evans filed a civil rights complaint regarding the medical care he received while incarcerated at the Jail. The Court screened the complaint and determined that Mr. Evans adequately stated an Eighth Amendment deliberate indifference claim against Dr. Emerson and Nurse Diana Jones when they discontinued pain medication which resulted in him experiencing pain in his hand and difficulty with daily tasks.

Presently pending before the Court is the defendants' motion for summary judgment filed on October 16, 2018. Dkt. 66. Mr. Evans did not file a response and the time do so has now passed.

The defendants' motion argues that Mr. Evans's claims are without merit because it was not objectively unreasonable for them to discontinue his pain medication after he was caught cheeking it. For the reasons set forth below, the defendants' motion for summary judgment, dkt. 66, is granted.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Fed. R. Civ. P*. 56(e)(3). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Harney v. Speedway Super America, LLC*., 526 F.3d 1099, 1104 (7th Cir. 2008). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co*., 242 F.3d 713, 723 (7th Cir. 2001).

Mr. Evans failed to respond to the defendants' summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts); S.D. Ind. Local Rule 56-1

("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

### III. Statement of Material Facts Not in Dispute

The defendants have submitted admissible evidence to establish the following material facts, which were not controverted by Mr. Evans.

Mr. Evans's hand was injured in an automobile accident in 2004. Dkt. 68-1, p. 1. He took hydrocodone "as needed" for the pain in his hand prior to his incarceration. *Id*., p. 4. During a Jail detention in 2005 and 2006, Mr. Evans was treated using only an NSAID (naproxen) pain reliever for eleven (11) months. Dkt. 68-2, p. 3-11.

On or about December 31, 2013, Mr. Evans was arrested and incarcerated as a pre-trial detainee in the Jail. Dkt. 68-1, p. 5. Quality Correctional Care, LLC provides medical care to the inmates at the Jail.

Quentin Emerson is a physician licensed in the State of Indiana who provided care to Mr. Evans at the Jail. Dkt. 68-3, ¶¶ 2, 3, 5, 6. Diana Jones is a Registered Nurse in the State of Indiana who provided care to Mr. Evans at the Jail. Dkt. 68-4 ¶¶ 2, 4, 7, 8. Both are Quality Correctional Care, LLC, employees.

Nurse Jones was responsible for administering Mr. Evans's medication to him. *Id*., ¶ 11. While at the Jail, Mr. Evans took gabapentin for nerve pain. Dkt. 68-3, ¶¶ 7, 8. While administering Mr. Evans's medication on June 20, 2016, Nurse Jones observed him "cheeking" his medication. *Id*., ¶ 12. Nurse Jones documented the incident and stated: "caught offender cheeking his

gabapentin . . . [w]hen doing a mouth check . . . the gabapentin almost popped out of his mouth." Dkt. 68-2, p. 1. Cheeking medication occurs when an individual hides it in his mouth. Dkt. 68-4, ¶ 12.

Quality Correctional Care, LLC, has a policy that requires the discontinuation of any medication when an inmate is caught cheeking it, unless the medication is required to preserve life. Dkt. 68-3, ¶ 10. Based on this incident and policy, Dr. Emerson discontinued Mr. Evan's prescription gabapentin. Dkt. 68-1, p. 11; dkt. 68-2, p. 2; dkt. 68-3, ¶¶ 11, 12; dkt. 68-4, ¶¶ 14, 15. Dr. Emerson instructed Nurse Jones that Mr. Evans could be prescribed NSAIDs if he complained of pain. Dkt. 68-3, ¶ 13. NSAIDs were available from the commissary. Neither Dr. Emerson nor Nurse Jones believed Mr. Evans would suffer any harm if his prescription for gabapentin was discontinued. *Id.* at ¶ 16; dkt. 68-4, ¶ 17. Mr. Evans had also been caught cheeking his medication on September 11, 2014, and February 17, 2015. Dkt. 68-7, pp. 1, 3.

After Mr. Evans' prescription for gabapentin was discontinued, he did not make any sick call requests complaining that he was in pain or requesting pain medication. Dkt. 68-1, p. 15. Mr. Evans filed a grievance with Jail staff and was notified he had to file such a grievance with medical staff. Dkt. 68-1, p. 15. The Jail handbook also requires that any concerns regarding an inmate's medical care must be made to medical staff by filing a sick call request. Dkt. 68-5.

Mr. Evans did not make any sick call requests once his prescription for gabapentin was discontinued until he filed a sick call request about experiencing pain on October 1, 2016. *Id.*, p. 49. He was seen the following day. Dkt. 68-3, ¶ 17; dkt. 68-4, ¶ 18.

### IV. Discussion

Mr. Evans was a pre-trial detainee when the events described above occurred. This is relevant because the Seventh Circuit recently clarified that a pretrial detainee's medical care claim

brought under the Fourteenth Amendment is subject only to the objective unreasonableness inquiry identified in *Kingsley v. Hendrickson*. 135 S. Ct. 2466 (2015). *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. Aug. 10, 2018).

Under *Miranda*, the proper inquiry is two-steps. "The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and 'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353). In the second step, a plaintiff must demonstrate the defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 353. This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable. *McCann*, 909 F.3d at 886. "A detainee must prove more than negligence but less than subjective intent–something akin to reckless disregard." *Miranda*, 900 F.3d at 353.

<u>Nurse Jones:</u>

In considering step one of the claim against Nurse Jones, prescriptions for non-life preserving medications could be discontinued according to Quality Correctional Care policy. Nurse Jones has no apparent reason to suspect that Dr. Emerson's order would harm Mr. Evans. In addition, there is no evidence that Nurse Jones' actions were objectively unreasonable. Mr. Evans included Nurse Jones in this action because she followed Dr. Emerson's instructions to discontinue the gabapentin. Dkt. 68-1, p. 12. A registered nurse like Nurse Jones was able to rely on Dr. Emerson to determine whether Mr. Evans' pain medication should be discontinued after he was caught cheeking it. It was not her responsibility to second-guess his medical judgment. *See*

*Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."). Accordingly, Nurse Jones' conduct in discontinuing Mr. Evans' prescription for gabapentin was not objectively unreasonable.

Dr. Emerson:

Here, there is no evidence that Dr. Emerson acted recklessly when he considered the consequences of discontinuing Mr. Evans' gabapentin. Dr. Emerson was aware that other pain medications were available to Mr. Evans, medications he had taken for months during a previous Jail detention. Similarly, Dr. Emerson's decision to discontinue Mr. Evans' prescription for gabapentin was not objectively unreasonable. Mr. Evans was caught cheeking gabapentin. Quality Correctional Care has a policy that requires the discontinuation of any non-life sustaining medication when an inmate is caught cheeking. Dkt. 68-7, p. 83.

Finally, it is not clear what, if any, injuries Mr. Evans suffered from the discontinuation of his pain medication because he did not complain of experiencing pain for approximately three months. Viewing the facts as a whole, the defendants' decision to discontinue Mr. Evans's pain medication was not objectively unreasonable.

## V. Conclusion

By failing to respond to the defendants' motion for summary judgment, Mr. Evans has not identified a genuine issue of material fact as to his claims in this case and the defendants are entitled to judgment as a matter of law.

The defendants' motion for summary judgment, dkt. [66], is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 1/8/19

*[signature: James R. Sweeney]*

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

PHILLIP ANDREW EVANS
982387
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Marianna P. Gerritzen
DREWRY SIMMONS VORNEHM, LLP
mgerritzen@dsvlaw.com

Tyler Scott Lemen
DREWRY SIMMONS VORNEHM, LLP (Carmel)
tlemen@dsvlaw.com

Janet A. McSharar
DREWRY SIMMONS VORNEHM, LLP
jmcsharar@DSVlaw.com